UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BENNY HAMMONS,<br><br>                  Plaintiff,<br><br>v.<br><br>DONTE,<br><br>                  Defendant. | Case No. 3:19-cv-00063-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Benny Hammons ("Hammons") against Defendant Michael Dante ("Dante").[2] Currently pending before the court is Dante's motion for summary judgment (ECF Nos. 18, 20).[3] Hammons responded by filing a cross-motion for summary judgment (ECF No. 26) and a motion to dismiss (ECF No. 27).[4] Dante replied (ECF No. 28, 32), as did Hammons (ECF No. 30). Also pending before the court is Hammons's motion for relief (ECF No. 25) and motion for appointment of counsel (ECF No. 31). Having thoroughly reviewed the record and papers, the court recommends Dante's motion for summary judgment (ECF No. 18) be denied, Hammons's cross-motion for summary judgment and motion to dismiss (ECF Nos. 26, 27) be denied, Hammons's motion for relief (ECF No. 25) be denied as moot, and Hammons's motion for appointment of counsel (ECF No. 31) be denied.

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice IB 1-4.

[2] Hammons refers to Dante as "Donte" in his complaint. (*See* ECF No. 3.)

[3] ECF No. 20 consists of sealed documents filed in support of Dante's motion for summary judgment.

[4] ECF Nos. 26 and 27 are identical documents.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hammons is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at the Warm Springs Correctional Center ("WSCC"). On February 5, 2019, proceeding *pro se*, Hammons filed a civil rights complaint pursuant to 42 U.S.C. § 1983 for events that occurred while he was incarcerated at the Southern Desert Correctional Center ("SDCC"). (ECF No. 1-1.) On August 22, 2019, Hammons filed a first amended complaint ("FAC"), which is the operative complaint in this case. (ECF No. 86.) The District Court screened the FAC pursuant to 28 U.S.C. § 1915A and allowed Hammons to proceed on the following: (1) in Count I, an Eighth Amendment excessive force claim against Dante; and (2) in Count III, an Eighth Amendment failure to protect claim against Dante. (ECF No. 4.) The Court dismissed, with prejudice, Hammons's Count II due process claim. (*Id.*)

### A. Allegations in FAC

Hammons alleges the following in his FAC: On March 9, 2018, there was a fight between two groups of inmates in Hammons's unit. (ECF No. 3 at 6.) Hammons was not involved in the fight. (*Id.*) When officers entered the unit, they ordered inmates to their assigned bunks and Hammons complied. (*Id.*) While Hammons was sitting on his assigned bunk, Dante struck Hammons with his night stick and rendered Hammons unconscious. (*Id.*) Dante swung the night stick "like a madman." (*Id.* at 4.) Dante struck Hammons above the left eye. (*Id.*) While Hammons was starting to go unconscious, he saw several "Southsider" inmates attack him with make-shift prison knives as Dante stood by and watched. (*Id.* at 6.) After knocking Hammons unconscious with his riot stick, Dante had an obligation to ensure Hammons's safety but failed to do so. (*Id.*) Prison officials rushed Hammons to UMC Medical Center for emergency surgery for his eyes and for the stab wounds on his back. (*Id.*) Hammons remained at the hospital for three days in the intensive care unit. (*Id.* at 4.)

///

///

2

### B. Dante's Motion for Summary Judgment and Hammons's Cross-Motion for Summary Judgment and Motion to Dismiss

On November 2, 2020, Dante filed a motion for summary judgment. (ECF No. 18.) Dante argues (1) Hammons cannot establish an excessive force claim, (2) Hammons cannot establish a failure to protect claim, and (3) Dante is entitled to qualified immunity. (*Id.*) In response to Dante's motion for summary judgment, Hammons filed a cross-motion for summary judgment and motion to dismiss. (ECF Nos. 26, 27.)

## II.   LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material." *Id.* A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex,* 477 U.S. at 323*; Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

3

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence . . . . [i]n fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

#### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the

1  underlying constitutional or statutory right.

## B. Eighth Amendment – Excessive Use of Force

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9.

5

1  Moreover, there is no need for a showing of serious injury as a result of the force, but the
2  lack of such injury is relevant to the inquiry.  *See id.* at 7-9; *Martinez*, 323 F.3d at 1184;
3  *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

4  Excessive force cases "nearly always requires a jury to sift through disputed
5  factual contentions, and to draw inferences therefrom," and for this reason, the Ninth
6  Circuit has "held on many occasions that summary judgment or judgment as a matter of
7  law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d
8  846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th
9  Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing
10  cases).

11  According to multiple reports made by SDCC correctional staff, on March 9, 2018,
12  an altercation took place at the SDCC between a group of approximately eight Hispanic
13  inmates and approximately five Caucasian inmates.  (*See* ECF No. 18-1[5].)  The
14  altercation quickly turned physical, with the Hispanic inmates striking Caucasian
15  inmates, including Hammons.  (*Id.* at 2.)  Officer Miranda called for assistance on his
16  radio and Officers Baker, Dante, Reyes, Dominguez, Warner, Gonzalez, and Bengil
17  arrived shortly after.  (*Id.* at 3, 14.)  The officers issued verbal commands to the inmates
18  to stop fighting and get on the ground.  (*Id.* at 3, 5, 7, 9, 12.)  Initially inmates complied
19  with the verbal commands, but when Officers approached the group, they began fighting
20  again.  (*Id.* at 3.)  Officers Dante and Warner then deployed MK-3 Oleoresin Capsicum
21  spray (pepper-spray), in an effort to gain compliance.  (*Id.* at 3, 7, 12.)  Officers Baker,
22  Dante, and Warner specifically reported observing multiple inmates attacking another
23  inmate at his bunk.  (*Id.* at 5, 7, 12.)  At one point, an unnamed inmate approached
24  Officer Dante and struck him in the back of the head.  (*Id.* at 3, 7.)  Five to six other
25  inmates joined in on the attack of Officer Dante, striking him in the face, neck, and body,

---

[5]  The reports of the correctional officers have been heavily redacted by the Nevada Attorney General's Office.  Thus, the court's summarization of events is based solely on what it can discern from the unredacted portions of the reports.

6

1    and eventually knocking him to the ground. (*Id.* at 3.) The inmates then began to kick
2    Officer Dante while he was on the ground. (*Id.* at 3.) Officer Baker observed Officer
3    Dante being attacked so he deployed his pepper-spray towards the group. (*Id.* at 3.)
4    Officer Reyes also observed Officer Dante's attack, so he drew his ASP baton and
5    began to strike at inmates blocking his path. (*Id.* at 3, 9.) Officers Baker and Dante
6    drew their own ASP batons and began to strike at the inmates surrounding Officer
7    Dante. (*Id.* at 3, 5, 7.) At this time Correctional Sergeant Knatz, and Officers Deluna
8    and Parker arrived, and the inmates began to comply with verbal commands to lay on
9    the ground. (*Id.* at 3.) All Officers restrained the involved inmates, including Hammons.
10   (*Id.* at 3.) Hammons was escorted to the infirmary by medical staff where it was
11   determined that he needed to be transported to the University Medical Center ("UMC")
12   for further medical treatment. (*Id.* at 3-4.) Hammons had a puncture wound on his left
13   lower back, cuts on his left cheek and forehead, and a bruise on his left eye. (ECF No.
14   18-4 at 4.) Officer Dante was evaluated by medical staff for abrasions on the bridge of
15   his nose and his left elbow, and reports of pain and swelling in his right index finger.
16   (ECF No. 18-1 at 4; ECF No. 18-4 at 3.)

17   In his motion for summary judgment, Dante contends there is no allegation or
18   evidence that he exerted force against Hammons maliciously and sadistically for the
19   purpose of inflicting harm. (ECF No. 18 at 6.) Dante further contends that Hammons's
20   allegations are only supported by his uncorroborated testimony. (ECF No. 32 at 3.)
21   Based on the evidence before the court, and in viewing all facts and drawing all
22   inferences in the light most favorable to Hammons, the court finds that summary
23   judgment must be denied with respect to the excessive force claim for several reasons.

24   First, Dante fails to meet his initial burden in moving for summary judgment to
25   demonstrate that a reasonable juror could not find for Hammons. *Celotex*, 477 U.S. at
26   323. Dante is thus unable to overcome the initial step in the summary judgment burden-
27   shifting framework. *See In re Oracle Corp.*, 627 F.3d at 387.

28

7

Hammons's verified complaint alone overcomes Dante's claim that "no evidence exists" to establish excessive force in this case. Pursuant to Ninth Circuit law, "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence . . . ." thus satisfying the *Celotex* affidavit requirement. *McElyea v. Babbitt,* 833 F.2d 196, 197-98 (9th Cir. 1986) (quoting *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).

To the extent Dante argues the court should discount the facts stated in the FAC, this argument also fails. The court may not engage in '[c]redibility determinations' or 'the weighing of evidence'" at the summary judgment stage, "as those are functions reserved for the jury." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Anderson*, 477 U.S. at 255).

Therefore, Dante has failed to meet his initial burden on summary judgment establishing that there was no evidence in the record that the events occurred based on the FAC. On this basis alone, Dante's motion should be denied as to the excessive force claim.

However, even if the court were to assume Dante met his initial burden on summary judgment, Dante's motion must still be denied. Viewing the evidence in the light most favorable to Hammons, the court cannot say as a matter of law that the force used was not excessive. This is based in part on the heavy redaction of Dante's evidence, which makes it unclear to the court what transpired during the events in question. Further, based on Hammons's allegations, Hammons was not involved in the riot, but was violently struck by Dante, knocking him unconscious and resulting in him being stabbed by other inmates. Dante does not dispute that he used his baton and swung at inmates. Importantly, multiple officers reported seeing a group of inmates attacking another inmate at his bunk, which potentially corroborates Hammons's contention that he was not involved in the riot but was still harmed. A reasonable jury could determine that knocking an innocent bystander unconscious is excessive force.

It is not the court's role to weigh conflicting evidence or make credibility determinations, but only to determine whether there is a genuine issue of material fact for trial. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Further, the Ninth Circuit has found that the reasonableness of force used is ordinarily a question of fact for the jury because such cases almost always turn on a jury's credibility determinations. *See Liston,* 120 F.3d at 976 n. 10.

The court finds that Hammons has set forth evidence sufficient to raise a genuine issue of material fact for trial as to whether Dante's use of force was "maliciously and sadistically" applied rather than as part of a "good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. Accordingly, the court recommends that Dante's motion for summary judgment (ECF No. 18) be denied as to Hammons's Eighth Amendment excessive force claim.[6]

### C. Eighth Amendment – Failure to Protect

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' have stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let

---

[6] Because the court finds that genuine issues of material fact exist for trial, the court necessarily recommends that Hammons's cross-motion for summary judgment and motion to dismiss (ECF Nos. 26, 27) similarly be denied.

9

1  the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

As discussed above, based on the evidence before the court, and in viewing all facts and drawing all inferences in the light most favorable to Hammons, there are genuine issues of material fact that preclude summary judgment. "If reasonable persons could differ" on the question of causation then "summary judgment is inappropriate and the question should be left to a jury." *Lemire*, 726 F.3d at 1080 (citing *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990)). Based on Hammons's allegations, Hammons was not involved in the riot, but was violently struck by Dante, knocking him unconscious and resulting in him being stabbed by other inmates. Hammons further alleges that Dante stood by and watched as Hammons was stabbed by the other inmates. Thus, a reasonable juror could find that Dante deliberately disregarded Hammons's safety by failing to intercede on the attack.

Further, the actual events that transpired are disputed by the parties, with Hammons and Dante offering vastly different versions of events. Again, it is not the court's role to weigh conflicting evidence or make credibility determinations, but only to determine whether there is a genuine issue of material fact for trial. *Summers*, 127 F.3d at 1152. Accordingly, because the court finds that genuine issues of material fact exist that preclude summary judgment, the court recommends that motions for summary judgment (ECF Nos. 18, 26, 27) be denied.

### D.  Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

Dante does not seem to dispute that the law surrounding excessive force and failure to protect is "clearly established." Rather, Dante seems to contend that Hammons has not alleged that Dante knowingly violated the law through the malicious and sadistic use of force or deliberately failed to render aid when Hammons was attacked. However, this is exactly what Hammons has alleged. (*See* ECF No. 3.) Because the court finds a genuine issues of material fact exists as to whether Hammons's constitutional rights were violated, and Dante does not address the "clearly established" prong, the court finds Dante is not entitled to qualified immunity regarding Hammons's Eighth Amendment excessive force or failure to protect claims at this time.

## IV.     MISCELLANEOUS MOTIONS

### A.     Motion for Relief

After Dante's motion for summary judgment was filed, but before Hammons filed his response, Hammons filed a motion stating that he had been in his cell for four weeks because of COVID-19 and discussed what he would be willing to do to settle his case. (ECF No. 25.) While no opposition was filed, the court recommends that the motion (ECF No. 25) be denied as moot based on the subsequent filing of the competing motions for summary judgment.

### B.     Motion for Appointment of Counsel

Hammons also filed a motion for appointment of counsel (ECF No. 31), to which Dante responded (ECF No. 33). No reply was filed. The motion for appointment of counsel is a form order stating Hammons is unable to afford counsel, the substantive issues and procedural matters are too complex for Hammons's comprehension and abilities, and by reason of his incarceration, Hammons cannot investigate, take depositions, or otherwise discover evidentiary materials on his own accord. (ECF No. 31 at 1.) Additionally, Hammons states that he has little or no education in these types of proceedings. (*Id.*)

There is no constitutional right to appointed counsel in a § 1983 action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc). The provision in 28 U.S.C. §1915(e)(1) gives the court discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see, e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1998) (en banc.) While the decision to request counsel lies within the discretion of the district court, the court may exercise this discretion to request counsel only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

A finding of "exceptional circumstances" requires the court to evaluate (1) the plaintiff's likelihood of success on the merits and (2) the plaintiff's ability to articulate his

claims *pro se* considering the complexity of the legal issues involved. *Id.* (quoting *Wilborn*, 789 F.2d at 1331) (internal quotation marks omitted). Neither factor is dispositive, and both factors must be considered before a court decides. *Id.* The difficulties every litigant faces when proceeding *pro se* does not qualify as an exceptional circumstance. *Wood v. Housewright*, 900 F. 2d 1332, 1335-36 (9th Cir. 1990). While almost any *pro se* litigant would benefit from the assistance of competent counsel, such a benefit does not rise to the level of "exceptional circumstances." *Rand*, 113 F.3d at 1525. Rather, the plaintiff must demonstrate that he is unable to articulate his claims due to their complexity. *Id.*

Exceptional circumstances do not exist in this instance. Hammons only makes conclusory assertions that this case is complex, however this case is limited to two Eighth Amendment claims, which do not involve complex questions, nor will they require expert assistance to understand. Additionally, the case is limited to one defendant. Moreover, even though Hammons contends that he has little or no education, he has demonstrated that he can articulate his claims to the court. (*See* ECF Nos. 26, 27.) And while Hammons contends that he has limited knowledge in these types of proceedings, such lack of experience is unexceptional compared to most prisoner civil rights cases. Because Hammons has not demonstrated exceptional circumstances, the court recommends that the motion (ECF No. 31) be denied.

**V.     CONCLUSION**

Based on the foregoing, the court recommends that Dante's motion for summary judgment (ECF No. 18) be denied, Hammons's cross-motion for summary judgment, and motion to dismiss (ECF Nos. 26, 27) be denied, Hammons's motion for relief (ECF NO. 25) be denied as moot, and Hammons's motion for appointment of counsel (ECF No. 31) be denied. The parties are advised:

1.     Pursuant to 28 U.S.C § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled

14

"Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Dante's motion for summary judgment (ECF No. 18) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Hammons's cross-motion for summary judgment and motion to dismiss (ECF Nos. 26, 27) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Hammons's motion for relief (ECF No. 25) be **DENIED AS MOOT**; and,

**IT IS FURTHER RECOMMENDED** that Hammons's motion for appointment of counsel (ECF No. 31) be **DENIED.**

**DATED**: March 25, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**